ROBINSON v. NEW YORK CENT. & H. R. R. CO. (Supreme Court, Appellate Division, First Department. June 23, 1911.) Action by Moncure Robinson against the New York Central & Hudson River Railroad Company. No opinion. Motion granted. Question certified as stated in order. Order filed. See, also, 129 N. Y. Supp. 1030.

ROCHESTER, Respondent, v. CHASE. Appellant. (Supreme Court, Appellate Division, First Department. June 23, 1911.) Action by Amy G. Rochester against Helen C. Chase. H. B. Wesselman, for appellant. G. H. Richards, for respondent. No opinion. Order affirmed, with $10 costs and disbursements. Order filed.

ROESLER, Appellant, v. MAHONEY, Respondent. (Supreme Court, Appellate Division, Second Department. July 27, 1911.) Action by Edward Roesler against Robert J. Mahoney. No opinion. Order affirmed, with $10 costs and disbursements. See, also, 128 N. Y. Supp. 1143.

ROGERS, Respondent, v. BALL, Appellant. (Supreme Court, Appellate Division, Third Department. June 28, 1911.) Action by Walter G. Rogers against Colin H. Ball.

PER CURIAM. Judgment and order affirmed, with costs.

SEWELL, J., dissents, on the ground that no contract of purchase was proven.

ROGERS v. PETERSON et al. (Supreme Court, Appellate Division, Third Department. June 28, 1911.) Appeal from Trial Term. Action by James Rogers against Herman C. Peterson and Hans Peterson, doing business under the firm name and style of H. C. Peterson & Co. Judgment for defendants, and plaintiff appeals. Affirmed.

PER CURIAM. Judgment affirmed, with costs.

BETTS, J. I dissent. This is an action under the employer's liability act. The plaintiff, a laborer, had been employed by the defendants through their superintendent, Theodore Crist, for about 2½ days before the accident occurred by which the plaintiff was injured. The work was erecting a steam pipe line in a conduit. The pipe line consisted of 8-inch iron pipes from 14 to 16 feet long and this 8-inch pipe was placed on an iron roller, which inclosed a short 1-inch pipe and was held by iron stanchions. Each pair of these stanchions were about eight feet apart, two on each length of pipe. At the time in question the plaintiff, with six other men, had a somewhat shorter piece of pipe to raise, and there was only one pair of stanchions to place it on, instead of the ordinary two pair. The usual manner had been to raise up one end upon one pair of stanchions, and shove it along upon another pair of stanchions past the end of the pipe they were going to couple to, and pull it back on the other end piece of the other stanchion. Then the men would get the 8-inch pipe in their arms and raise it up and adjust it to make the coupling on the 8-inch piece of pipe that was already in position. This they would do by inserting the end of the pipe into the coupling, and make it fast by turning the thread into the coupling by hand, and then put on chain tongs and tighten it up. At the time or just before the accident there was only one pair of stanchions, instead of the usual two pair of stanchions, and the seven men engaged there were hesitating as to putting up this particular piece of 8-inch iron pipe, which was about 14 feet long and heavy. Mr. Crist, the superintendent, came in and inquired what was the matter, and told the men who were considering how to put up the pipe laying on the floor to pick it up and shove it up into the coupling; that is, the coupling of the other pipe, that was already erected. This they did in this way: The end with the thread on was shoved into the coupling of the pipe that was in position. Then this long pipe they were raising ran diagonally out from this coupling to the single pair of stanchions in which the one-inch iron pipe was (somewhere about 4 feet up from the floor), and resting on the 1-inch iron pipe to the farther end of the pipe, that would have the coupling to receive the next piece of 8-inch pipe which was lying on the floor. So we have this heavy 14-foot length of iron pipe with the thread end just a little way in the coupling of the pipe already erected and running downward between the stanchions and until the other end rested on the floor. At this time apparently three men were on one end of the pipe that was on the floor, and one man at the other end trying to hold it up in the coupling, and the plaintiff was about the middle or near the stanchion, none of them doing anything. Plaintiff said he could not see what the two other men were doing. Then Crist told the men at the end of the pipe that was on the floor to lift it up. When they did lift it up, it raised the iron pipe up from the short 1-inch pipe on the stanchions a short distance, whereupon Crist, it is testified to, told plaintiff, "Rogers, you take that [1-inch piece of pipe] out and put the roller on it and put it back in." This was the inch round piece of pipe between the two stanchions where Rogers was standing, and the roller was to be placed on it so as to make it higher. This Rogers attempted to do. When the raising up of the farther end of the 8-inch pipe from the floor by the men there occurred, it naturally caused the thread end of the pipe farthest from those men who were lifting to slip out of the coupling. Naturally and inevitably the farther they lifted up their end the nearer the thread end would be to falling out of the coupling, and when they got their end raised up even, or nearly even, with the coupling, it must of necessity fall. This is what did happen, and before Rogers was able to get the 1-inch pipe out he got his hand caught between the falling 8-inch pipe and the 1-inch pipe, and he received the injuries for which the action was brought. Crist changed the usual procedure, and plaintiff claims he was hurt by this change, and would not have been if they had pursued the ordinary way used